FILED

JAN 1 2 2024

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>     v.<br><br>Eduardo MONREAL-Tapia,<br><br>                    Defendant. | Case No.: **24MJ8001-LR**<br><br>**FINDINGS OF FACT AND ORDER OF DETENTION** |

     In accordance with Title 18, United States Code, Section 3142(f) of the Bail Reform Act of 1984 (18 U.S.C. § 3141, et seq.), a detention hearing was held on January 10, 2024, to determine whether defendant Eduardo MONREAL-Tapia ("MONREAL" or Defendant), should be held in custody pending trial on the grounds that he is a flight risk. Assistant U.S. Attorney Daniel F. Casillas appeared on behalf of the United States. Court appointed counsel, James Johnson, appeared on behalf of Defendant.

     Based on the evidence proffered by the United States and Defendant, the Pre-Trial Services Report, and the information provided in the Criminal Complaint issued on January 2, 2024, the Court concludes that the following facts establish by a preponderance of the evidence that no condition or combination of conditions required will reasonably assure Defendant's appearance.

I

# FINDINGS OF FACT

A. <u>Nature and Circumstances of the Offense Charged (18 U.S.C. § 3142(g)(1))</u>:

Defendant is charged in Criminal Complaint No.24MJ8001 with Transportation of Illegal Aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii). Therefore, probable cause exits to believe Defendant committed the charged offense.

B. <u>Weight of the Evidence Against the Defendant (18 U.S.C. § 3142(g)(2))</u>:

On December 30, 2023, at approximately 7:43 p.m., while CBP Officer Loaiza manned vehicle primary lane number 6, when a black Honda Accord applied for admission into the United States driven by Eduardo MONREAL-Tapia (MONREAL) accompanied by a minor male later identified as S.G.R. MONREAL presented a United State passport card has his entry document and a Legal Permanent Resident card for S.G.R. CBP Officer Loaiza examine the Legal permanent resident card presented for S.G.R. and notice the picture on the card did not match. At this time, CBP officer Loaiza refer the vehicle and MONREAL and S.G.R. to Vehicle Secondary Lot for further admissibility inspection. At the Calexico, California West Port of Entry, the International Boundary is marked with a yellow line approximately 100 feet before the Primary Inspection booths. At the time of primary inspection, MONREAL and S.G.R. was in the United States.

In the Vehicle Secondary Lot, CBP Officer Guzman conducted an interview of MONREAL and S.G.R. and discover both were imposter to the document presented. MONREAL and S.G.R. were immediately detained and escorted to the Vehicle Secondary Office for further disposition. In Vehicle Secondary office, MONREAL and S.G.R were fingerprinted and query at Integrated Automated Fingerprint Identification System (IAFIS) with results revealing previous immigration violations. Records check contained no evidence MONREAL is in position of any legal documents that allowed him to enter into the United States. Records check contained no evidence S.G.R. is in position of any

1  legal documents that allowed him to enter into the United States. MONREAL and S.G.R.
2  were escorted to the admissibility Enforcement Unit (AEU) for further disposition.
3  　　　　MONREAL was advised of his Miranda rights in the Spanish language in which he
4  acknowledged his rights and agreed to answer questions without an attorney present
5  MONREAL admitted he was the driver of the vehicle transporting S.G.R. and that he was
6  aware that S.G.R. did not have legal documents to enter the United States. MONREAL
7  stated he meet an unknow subject that will help him enter the United States illegally.
8  MONREAL state the smuggler will assist him smuggle into the United States for
9  $20,000.00 United Stated Dollars. MONREAL stated if he was successful, he was going
10 to residence in Calexico, California MONREAL further stated he was offered a smuggling
11 discount if is accompanied by an unknown passenger in the vehicle that will be provided.
12 MONREAL stated he accepted the offer and agree to smuggle S.G.R. and will only have
13 to pay a discount smuggling fee of $3,000 United States dollars. MONREAL pick up the
14 vehicle at a "El Tecolote" parking lot in Mexicali and S.G.R. was already in the vehicle.
15 MONREAL stated he told S.G.R. let's hope we are successful into our illegal entry.
16 MONREAL stated that he already paid $1,500.00 United States dollars to an unknown
17 smuggler and will have to pay the other half after he successfully made it to the United
18 States. MONREAL stated that he knew it was illegal to cross in the manner he attempted,
19 but he did not care about the consequences because he just wants to cross into the United
20 States to be with his family.
21 　　　　Material Witness, minor S.G.R. stated he is a citizen of MEXICO with no legally
22 issued documents to enter the United States. S.G.R. admitted he wanted to enter the
23 United States to live with his grandfather, brother, and aunt in Mendota, California.
24 S.G.R. stated his father made all the arrangements with the smuggler and he did not how
25 much his father was going to pay for him to be smuggle into the United States. S.G.R.
26 stated an unknown smuggler picked him up and take him to a stash house where he was
27 provided biographical information and instructed to memorized. S.G.R. stated that
28 MONREAL arrived at the house he was staying at and pick him up to drive to the border.

3

S.G.R. stated MONREAL knew he did not have a legal document to enter the United States because MONREAL had asked if he learned the biographical information. S.G.R. stated soon after he and MONREAL drove to the border and waited in line to enter the United States. S.G.R. stated he knew it was illegal to enter the United States the way he was attempting, but he did it because he is afraid to live in Michoacan, Mexico. S.G.R. stated if successful in his illegal entry he will travel with his aunt to Mendota, California.

C. History and Characteristics of the Defendant (18 U.S.C. § 3142(g)(3)):
1. Defendant is a citizen of Mexico and resides in Mexicali, Baja California, Mexico.
2. Defendant is 25 years old.
3. Defendant was previously deported from the United States on March 30, 2019 and does not have the legal ability to live or work in the United States.
4. Defendant has a criminal history including the following convictions:
    a. Importation of Methamphetamine, in violation of 21 U.S.C. Sections 952 and 960, in the Southern District of California on November 20, 2017; and
    b. Transportation of Certain Aliens, in violation of 8 U.S.C. Section 1324, in the Southern District of California on May 11, 2020.

D. Nature and Seriousness of Danger Posed by Release (18 U.S.C. § 3142(g)(4)):

The government proffered no evidence to suggest that release of Defendant would pose a danger to any person or the community.

II

REASONS FOR DETENTION

1. There is probable cause to believe that Defendant committed the offense charged in Criminal Complaint No. 24MJ8001, Transportation of Illegal Aliens in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).
2. Defendant is a Mexican citizen and resides in Mexicali.
3. Defendant has been previously deported and does not have legal immigration status in the United States.

4

4. Defendant has a serious and recent criminal history, which includes two federal felonies.
5. The weight of the evidence is strong against Defendant. Specifically, Defendant admitted to the criminal conduct.
6. Defendant faces a substantial period of time in custody if convicted of the offense charged in the Complaint. Therefore, Defendant has a strong motive to flee.
7. Defendant has not proffered a surety with sufficient assets to justify bond.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## III

## ORDER

IT IS HEREBY ORDERED that Defendant be detained pending trial in this matter.

IT IS FURTHER ORDERED that Defendant be committed to the custody of the Attorney General, or his designated representative, for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel.

While in custody, upon order of a court of the United States or upon the request of an attorney for the United States, the person in charge of the correctional facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding or any other appearance stipulated to by defense and government counsel.

THIS ORDER IS ENTERED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: 1/12/24

HON. LUPE RODRIGUEZ, JR.
U.S. MAGISTRATE JUDGE

Prepared by:
TARA K. MCGRATH
UNITED STATES ATTORNEY

*Daniel F. Casillas*
Daniel F. Casillas
Assistant U.S. Attorney

cc:   James Johnson, Federal Defenders of San Diego, Inc.